2026 IL App (3d) 250131

Opinion filed June 24, 2026

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
|---|---|---|
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-25-0131 Circuit No. 23-CM-1315 |
| RENITTA D. HILL, | ) ) ) | Honorable Sherri Hale, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BERTANI delivered the judgment of the court, with opinion.
Justices Brennan and Anderson concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Renitta D. Hill, appeals her conviction for resisting a peace officer, arguing that the evidence was insufficient to find her guilty beyond a reasonable doubt. We affirm.

¶ 2                                          I. BACKGROUND

¶ 3        The State charged defendant by criminal complaint with obstructing a peace officer (720 ILCS 5/31-1(a) (West 2022)) and two counts of resisting a peace officer (*id.*). The obstruction charge alleged defendant obstructed a peace officer by refusing the officer's order to stop and move away from a residence. The two resisting counts alleged defendant (1) pulled her arms

away from the officer effectuating her arrest and (2) locked her legs and refused orders to enter the squad car during her arrest.

¶ 4    At a bench trial, officer testimony and body camera video footage established that on November 14, 2023, Village of University Park Police Chief Dale Mitchell and Sergeant Jason Kinnan were assisting defendant with the enforcement of a court order to retrieve personal property, which included a PlayStation 5 gaming system. A dispute arose when the occupant of the residence, Terrance Summers, refused to relinquish the gaming system to defendant. As a result of this dispute, defendant and Summers intermittently engaged in heated verbal exchanges during the transfer of other property listed in the order. After loading the items into her vehicle, defendant drove away from the residence.

¶ 5    Defendant returned moments later and stopped her vehicle in front of the residence as the officers spoke with Summers in the driveway. Summers claimed he felt threatened, and Kinnan asked if he would be willing to sign a complaint for disorderly conduct. Summers responded affirmatively. Both officers testified that, after an individual has expressed his or her desire to sign a criminal complaint, the subject of the complaint is usually arrested. Defendant informed the officers that she intended to speak with the neighbors across the street and proceeded to pull her vehicle into their driveway after Mitchell repeatedly warned her that she would be arrested if she did not leave. Defendant then entered the neighbors' residence. The officers were subsequently allowed inside the residence, and defendant was arrested. Defendant pulled her arms away as Kinnan attempted to place defendant in handcuffs.

¶ 6    During closing arguments, defense counsel discussed section 31-1(d) of the Criminal Code of 2012 (Code), which states that "[a] person shall not be subject to arrest for resisting arrest under this Section unless there is an underlying offense for which the person was initially

subject to arrest." *Id.* § 31-1(d). Counsel appears to have argued that section 31-1(d) required the State to prove beyond a reasonable doubt that defendant committed a predicate offense for which she was initially subject to arrest. Counsel asserted that the State had failed to meet this burden because the evidence did not establish that defendant committed disorderly conduct or obstruction of a peace officer.

¶ 7    Defendant was found guilty of resisting a peace officer for pulling her arms away from Kinnan during her arrest and acquitted of the remaining charges. In rendering its decision, the court found there was probable cause to arrest defendant, explaining that the officers credibly testified that their decision to arrest her was based on her failure to comply with repeated orders to leave. The court sentenced defendant to 12 months' conditional discharge.

¶ 8    Defendant filed a motion to reconsider the finding of guilt and sentence in which she alleged, in relevant part, "that the court erred in finding that the State presented evidence sufficient to support a finding of guilt as to the charge of Resisting a Peace Officer." Defense counsel argued, without reference to any statute, that the evidence was insufficient to establish that she was subject to arrest for the underlying or predicate offense of disorderly conduct. Counsel clarified on rebuttal that "it's not my assertion that the State needed to prove beyond a reasonable doubt that [defendant] committed a disorderly conduct." Rather, she argued the evidence did not support a finding that defendant was subject to arrest for that offense. The court denied the motion, noting that whether disorderly conduct would have been proven beyond a reasonable doubt "was not before the Court, only that the officers were acting in their official capacity." The court stated that the officers had acted in their official capacity based on defendant's conduct and because they had a complaint against her.

¶ 9                                      II. ANALYSIS

3

¶ 10        On appeal, defendant argues that the evidence was insufficient to sustain her conviction for resisting a peace officer. Defendant does not challenge the elements of the offense as charged under section 31-1(a) of the Code. See *id.* § 31-1(a). Rather, defendant asserts that section 31-1(d) incorporates an additional element of, or alternatively creates an exception to, the offense of resisting a peace officer. Defendant argues that, pursuant to section 31-1(d), the State failed to prove that she was subject to arrest for a predicate offense. See *id.* § 31-1(d). In support of her assertion, defendant points to the legislative history of section 31-1 of the Code, citing statements made regarding the 2021 amendment that added section 31-1(d): "[i]n regards to resisting arrest, the Bill requires a predicate offense to charge someone with resisting arrest. Please stop charging black folks for resisting arrest when there has not been a predicate offense." 101st Ill. Gen. Assem., House Proceedings, Jan. 13, 2021, at 7 (statements of Representative Slaughter); Pub. Act 101-652, § 10-215 (eff. Jan. 1, 2023) (amending 720 ILCS 5/31-1).

¶ 11        The primary objective of statutory construction is to ascertain and give effect to the intent of the legislature. *People v. Harris*, 2024 IL App (3d) 230406, ¶ 17. As the plain and ordinary meaning of the statutory language is the most reliable indicator of legislative intent, we may not depart from that language by reading in exceptions, limitations, or conditions. *Id.* Issues of statutory interpretation are reviewed *de novo*. *People v. Clark*, 2024 IL 130364, ¶ 15.

¶ 12        Whether a criminal statutory provision is an element of, or exception to, the offense that must be proved by the State is determined by whether the legislature intended the provision to be descriptive of the offense. *People v. Tolbert*, 2016 IL 117846, ¶ 15. Generally, a provision is considered descriptive of the offense if the elements of the offense cannot be accurately described without referencing it. *People v. Rodgers*, 322 Ill. App. 3d 199, 202 (2001).

4

¶ 13    In determining whether section 31-1(d) of the Code constitutes an element or exception that the State is required to prove, we find the recent decision in *People v. Carswell*, 2026 IL App (1st) 231884, instructive. The defendant in *Carswell* raised a virtually identical claim on appeal regarding the statutory interpretation of section 31-1(d). The First District rejected the claim and determined that section 31-1(d) does not function as an additional element or an exception to the offense of resisting arrest[1] because the plain language of the subsection does not describe the offense or expressly create an exception. *Id.* ¶ 16. The court held that construing section 31-1(d) as an element or exception would improperly add an unintended provision or limitation to the statute, noting that the legislature could have clearly denoted section 31-1(d) an exception using the same unambiguous language it had employed for other statutory exceptions throughout the Code. *Id.* ¶¶ 16-17.

¶ 14    Additionally, the *Carswell* court noted that section 31-1 must be read in conjunction with section 7-7 of the Code (720 ILCS 5/7-7 (West 2022)) pursuant to our supreme court's decision in *People v. Locken*, 59 Ill. 2d 459, 464 (1974). *Carswell*, 2026 IL App (1st) 231884, ¶ 18. As section 7-7 prohibits the use of force to resist an arrest even if the arrest is unlawful, the "resistance of even an unlawful arrest by a known officer is a violation of section 31-1." *Locken*, 59 Ill. 2d at 465. Applying this principle, the *Carswell* court concluded that "subsection (d) merely makes an arrest for resisting arrest without a predicate offense unlawful" but "does not give rise to an exception or defense" because such an interpretation would "effectively permit

---

[1]Defendant here and the defendant in *Carswell* were both charged with the same offense under section 31-1(a) of the Code. *Carswell*, 2026 IL App (1st) 231884, ¶ 1. While we refer to this offense as resisting a peace officer, *Carswell* alternatively refers to the same offense as resisting arrest. It is apparent from our review that both terms are used interchangeably in Illinois case law. See, *e.g.*, *People v. Delgado*, 2025 IL App (1st) 241518, ¶¶ 31, 33 (construing the charged offense of resisting a peace officer under section 31-1 as resisting arrest).

persons to resort to self-help in contravention of section 7-7." *Carswell*, 2026 IL App (1st) 231884, ¶ 18.

¶ 15        Here, as in *Carswell*, defendant argues that section 31-1(d) is descriptive of the offense because it makes a conviction contingent on a predicate offense as the initial basis for the arrest. However, the plain language of section 31-1(d) does not mention conviction; it only makes an arrest for resisting arrest contingent on the existence of an underlying offense. *Id.* ¶ 16. As the *Carswell* court observed, the statute also does not include any language expressly designating it as an exception despite the legislature's use of precise exception designations in other statutes throughout the Code. *Id.* ¶ 17. In addition to "except" and "does not apply" as examples of express exception language noted in *Carswell*, other designations explicitly refer to exceptions that preclude conviction or criminal liability for the offense. (Internal quotation marks and emphases omitted.) See *id.*; 720 ILCS 5/28-1(b) (West 2024) (stating that participants "shall not be convicted" of gambling for excluded activities); *id.* § 12-4.4a(c)(2) (specifying that the criminal abuse or neglect of an elderly person statute does not "impose[ ] criminal liability" on caregivers acting in good faith). It is apparent from these examples that the legislature could have used comparable language if it intended for section 31-1(d) of the Code to operate as a determinative factor for conviction as defendant suggests. See *Carswell*, 2026 IL App (1st) 231884, ¶ 17 ("When the legislature has clearly expressed a concept elsewhere, it weighs against construing the same concept where it has not."). Moreover, section 31-1(d) cannot be construed as descriptive of the offense because resisting arrest is a criminal act independent of the lawfulness of the arrest. See *id.* ¶ 18; *People v. Bruemmer*, 2021 IL App (4th) 190877, ¶ 36 (statutory provision is not descriptive where the offense can stand alone without it).

6

¶ 16        Accordingly, defendant's claim that the evidence was insufficient to sustain her conviction fails, as there was no additional element or exception that the State was required to prove pursuant to section 31-1(d) of the Code.

¶ 17                    III. CONCLUSION

¶ 18        The judgment of the circuit court of Will County is affirmed.

¶ 19        Affirmed.

*People v. Hill*, 2026 IL App (3d) 250131

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 23-CM-1315; the Hon. Sherri Hale, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Santiago A. Durango, and Emily A. Brandon, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, Thomas D. Arado, and Max Watson, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |